## EARL Y. BROWN v. H. C. BEDINGER.

### No. 6110.

1. **Boundary Lines.**—Where the acts and purpose of the surveyor are shown to locate a line which is not marked, such line will be recognized against course and distances from other corners.

2. **Improvements in Good Faith.**—A defendant claiming compensation for improvements upon the land sued for must show his possession to have been in good faith. This is not done where he claims to be upon a vacancy between two surveys, and his own deed, under which the plaintiff claims, calls for a common corner and a consequent common line between the two surveys between which the vacancy is claimed.

3. **Good Faith—Notice.**—The defendant is chargeable with the inevitable result

of facts within his knowledge as to the boundary lines affecting his right to possession. A neglect of care to determine the locality of lines so indicated is not consistent with good faith.

APPEAL from Johnson. Tried below before Hon. Eugene Williams, exchanging with Hon. J. M. Hall.

The statement of the case appears in the opinion.

*M. A. Otis,* for appellant, cited Stroud v. Springfield, 28 Texas, 650; Waelder v. Carroll, 29 Texas, 333; Smith v. Russell, 37 Texas, 255; Hurt v. Evans, 49 Texas, 316.

COLLARD, JUDGE.—Earl Y. Brown, the appellant, brought this suit against the appellee, H. C. Bedinger, for a strip of land 56 varas wide by 1300 varas long. Plaintiff claimed under the A. Bone original survey, and insisted that the Bone extended to the J. R. Hix and Samuel Cooper surveys on the west. Defendant claimed that there was a vacancy between the Bone and the two surveys named. The question is one of boundary. The plaintiff deraigned title to a one-half undivided interest of the land claimed by him from defendant by deed which called for the southwest corner of the survey as the southeast corner of the Hix survey. The east boundary of the Hix and Cooper was a continuous straight line. One George W. Pierce, deceased at the time of the trial, while showing to the owner of the Hix and Cooper surveys in 1861 his lines, declared to him that the Hix southeast and the Bone southwest lines were identical. The owner of the Cooper testified that he and Brown had agreed on the dividing line between them, which placed the house in which defendant lived a short distance on plaintiff's side of the line.

One Maxey testified that he was one of the chain carriers when the original Bone survey was made. He says Pierce began at the southeast corner of the Hix and running east closed again on the Hix; that Hix was then living on his survey and is now dead. The county map shows no vacancy. The county surveyor testified that there was a vacancy between the Bone on the east and the Cooper and Hix on the west; that the surveys are in the prairie, and that no lines or corners are found on the west of the Bone or on the east line of the Cooper and Hix; that running from the known connections of the surveys the distance shows a vacancy of 56 varas wide. He says: "The only thing I found to indicate that there was no vacancy between the Bone on the east and the Hix and Cooper on the west was the beginning call for the Samuel Cooper survey, which calls to begin at the northeast corner of the Hix survey *in the east* line of the Bone." He again says the vacant strip as shown by distance is 50 varas wide. He says: "To run the north line of the Cooper (which is north of the Hix) from its northwest corner, as it would

be established to begin in the west line of the Bone where plaintiff claims it to be, giving its (the Cooper's) north line its complement of varas, and then a line south to its beginning would run a line diagonally across the vacancy and leave defendant's house east of the line."

It seems clear to us from the foregoing testimony that the Bone survey was intended in its original location to leave no vacancy between its west line and the east line of the Hix. The most reliable evidence as to what was actually done by the surveyor in making the survey is that of the witness Maxey, one of the chain carriers, and the declarations of the deceased surveyor who run the original lines. This evidence is not disputed, and it unquestionably makes the southeast corner of the Hix and the southwest corner of the Bone identical. From this point the lines of both surveys run due north, making the west line of the Bone and the east line of Hix one and the same. The Cooper east line is a continuation of the Hix, and the Cooper southeast corner is called to be at the northeast corner of the Hix in the west boundary of the Bone, from which it runs due north, necessarily with the west line of the Bone.

The evidence gives the very acts and intentions of the surveyor and puts us on his footsteps; it should not be made to yield to distance, especially when the error in distance is so slight—only fifty to fifty-six varas in a line nearly thirteen hundred varas long. The excess in the survey claimed by plaintiff is small, 6.03 acres in a survey of nearly 300 acres. The evident intention of the surveyor was to leave no vacancy, and that intention should prevail. The Bone was surveyed after the Hix and must extend to it. Moore v. Riley, 68 Texas, 669.

We do not think defendant's claim for improvements made in good faith can be sustained. He fails to show good faith. His own deed, under which plaintiff holds, called for joining the Hix at its southeast corner. He should have exercised reasonable care to ascertain whether there was in fact a vacancy. By the use of such care he could have learned that the Cooper called to begin in the west line of the Bone at the northeast corner of the Hix. We have no reason to believe otherwise than that he knew the facts by which the law inevitably connects these surveys, and so knowing took the risk against the law. Such being the case—or if he could have known the facts by reasonable care and inquiry—he can not say he acted in good faith in making improvements. Thompson v. Comstock, 59 Texas, 318, and authorities there cited.

We therefore conclude that the judgment of the court below ought to be reversed and rendered by the Supreme Court in favor of appellant, Earl Y. Brown.

*Reversed and rendered.*

Adopted December 11, 1888.